IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KHESI PILLOWS and TIFFANY WILSON, <br><br> Plaintiffs, <br><br> v. <br><br> COOK COUNTY RECORDER OF DEEDS OFFICE and COOK COUNTY, <br><br> Defendants. | No. 18 C 7497 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs Khesi Pillows and Tiffany Wilson are former employees of defendant Cook County Recorder of Deeds Office (the "Recorder's Office"). On November 13, 2018, plaintiffs filed a two-count complaint against the Recorder's Office and defendant Cook County, alleging that the Recorder's Office violated consent decrees entered in *Shakman v. Democratic Organization of Cook County*, No. 69 cv 2145 (N.D. Ill.) ("*Shakman* Decrees")[2] and requesting indemnification from Cook County (doc. # 1: Compl.). On April 11, 2019, after obtaining an extension of time to respond, defendants moved to dismiss plaintiffs' complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) (doc. # 12; doc. # 14: Defs.' Mot. to Dismiss).[3]

---

[1] On April 19, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 17, 21).

[2] It is not clear from the complaint itself, but plaintiffs later clarified that they are alleging that only the Recorder's Office violated the *Shakman* Decrees (doc. # 23: Pls.' Resp. to Defs.' Mot. to Dismiss, Ex. A, at 4).

[3] On April 4, 2019, defendants filed a motion for an extension of time to answer or otherwise plead (doc. # 10). Defendants subsequently indicated to plaintiffs that they would answer the complaint if plaintiffs clarified which count was brought against which defendant (Pls.' Resp. to Defs.' Mot. to Dismiss, Ex. A, at 5). Plaintiffs did so, but defendants still moved to dismiss plaintiffs' complaint (*Id.* at 3-4). Although defendants were permitted to do so—the district court's order granting an extension gave them until April 11, 2019 to "respond" to the complaint (doc. # 12)—we do not condone defendants' actions.

Defendants' motion is now fully briefed. For the reasons set forth below, we grant defendants' motion to dismiss, but do so without prejudice.

## I.

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to give the defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Notice alone, however, is insufficient to survive a motion to dismiss; a complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). Indeed, "the Supreme Court's decisions in *Twombly* and *Iqbal* ushered in a requirement that civil pleadings demonstrate some merit or plausibility in complaint allegations to protect defendants from having to undergo costly discovery unless a substantial case is brought against them." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining the plausibility of a claim, a court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). By contrast, a court does not consider "legal conclusions and conclusory allegations merely reciting the elements of the claim," as they "are not entitled to [the] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Seventh Circuit has interpreted the "plausibility" standard as requiring "a nonnegligible probability that the claim is valid[.]" *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010). In applying this standard, a court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.

Plaintiffs allege the following in their complaint, and we accept as true all well-pleaded, non-conclusory allegations in deciding their motion to dismiss. *See McCauley*, 671 F.3d at 616. Ms. Pillows began working for the Recorder's Office in February 1999, and Ms. Wilson began working for the Recorder's Office in February 2001 (Compl., ¶¶ 9-10). At all relevant times, both plaintiffs were employed as a "Systems Analyst III" and performed their jobs according to the legitimate expectations of the Recorder's Office (*Id.*, ¶¶ 5-6, 11-12).

On November 6, 2012, Karen Yarbrough was elected Recorder of Deeds, and she took office in December 2012 (Compl., ¶ 14). The Recorder's Office believed that plaintiffs were politically affiliated with Eugene Moore, who preceded Ms. Yarbrough as Recorder of Deeds and who was also Ms. Pillows's godfather (*Id.*, ¶ 13).[4] The Recorder's Office was further aware that plaintiffs were not politically affiliated with Ms. Yarbrough (*Id.*, ¶ 22). Shortly after Ms. Yarbrough took office, Deputy Recorder of Deeds William Velazquez prepared a document indicating that the Recorder's Office should "Let go Tiffany Wilson . . ." and other individuals believed to be politically connected to Mr. Moore (*Id.*, ¶ 15).[5]

---

[4] Plaintiffs make their allegation about the Recorder's Office's belief "[u]pon information and belief" (Compl., ¶ 13), which is permitted when "alleging matters peculiarly within the defendant's knowledge." *Michael v. Letchinger*, No. 10 C 3897, 2011 WL 3471082, at *16 (N.D. Ill. Aug. 5, 2011).

[5] Plaintiffs do not allege with more specificity when Mr. Velazquez prepared the document and, as later noted, plaintiffs did not attach the document to their complaint as an exhibit.

On or about August 1, 2016, Ms. Pillows was reassigned "again" on a temporary basis from her training coordinator duties to timekeeping duties (Compl., ¶ 16).[6] On November 28, 2016—the same day that Ms. Pillows's temporary reassignment ended—both plaintiffs were notified that their positions would be eliminated as of December 2, 2016 as part of a layoff (*Id.*, ¶¶ 17, 18). Plaintiffs allege that their employment was terminated because they were not politically affiliated with Ms. Yarbrough and based on their perceived affiliation with Mr. Moore (*Id.*, ¶¶ 23, 26, 27).

Although the Recorder's Office stated that plaintiffs' layoffs were due to budgetary reasons, plaintiffs allege that this justification "was false and merely pretext for illegal discrimination" (Compl., ¶¶ 20, 21). The Recorder's Office hired at least two other individuals in October and November 2016 with salaries similar to plaintiffs' salaries (*Id.*, ¶ 20). Moreover, plaintiffs were not given 30-days' notice for their layoffs as were all other individuals who were laid off in Cook County in 2016, and their supervisors were not notified of their layoffs (*Id.*, ¶¶ 19-20). Each plaintiff also performed necessary and crucial tasks in their positions (*Id.*, ¶ 20).

Plaintiffs filed a complaint with the Cook County Inspector General's Office ("IGO") and received a decision from the IGO (Compl., ¶ 4)—plaintiffs' complaint here, however, does not disclose the results of the IGO investigation. Plaintiffs also completed the IGO's settlement procedure with the Recorder's Office, but the parties did not come to a resolution (*Id.*).

## III.

Count I of plaintiffs' complaint alleges that the Recorder's Office violated the *Shakman* Decrees by terminating plaintiffs' employment based on their non-affiliation with Ms. Yarbrough, who was elected Recorder of Deeds in 2012, and their perceived affiliation with the previous

---

[6] Plaintiffs' complaint does not allege any prior instance in which Ms. Pillows received a temporary assignment.

Recorder of Deeds, Mr. Moore (Compl., ¶¶ 14, 25-28). Count II seeks indemnification from Cook County for damages resulting from the *Shakman* Decree violations committed by the Recorder's Office (*Id.*, ¶¶ 29-32). We address defendants' arguments for dismissal of each claim in turn.

## A.

Defendants' primary argument is that Count I should be dismissed because plaintiffs failed to allege facts adequate to state a plausible *Shakman* claim (Defs.' Mot. to Dismiss at 2-3). The *Shakman* Decrees are generally designed "to eliminate political considerations in employment decisions made by" Cook County (and certain other governmental entities). *See Bonnstetter*, 811 F.3d at 971; *Greene v. Cook Cty. Sheriff's Office*, 79 F. Supp. 3d 790, 800 (N.D. Ill. 2015); *Christianson v. Yarbrough*, No. 14 C 7363, 2015 WL 1607437, at *4 (N.D. Ill. Apr. 2, 2015). These decrees prohibit the "county from, among other things, conditioning employment decisions (including hiring, firing, promotions, recalls from layoffs and transfers) on any political affiliation or political activity, except in the case of certain 'exempt positions.'" *Consolino v. Towne*, 872 F.3d 825, 827-28 (7th Cir. 2017).

Specifically, the Recorder's Office is prohibited from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of Governmental Employment including, without limitation, hiring, promotion, demotion, transfer and discharge (other than for Exempt Positions), upon or because of any political reason or factor[.]" *Christianson*, 2015 WL 1607437, at *4; Suppl. Relief Order for the Cook Cty. Recorder of Deeds in *Shakman v. Democratic Org. of Cook Cty.*, No. 69 cv 2145 (N.D. Ill.), doc. # 1831, at 1. To plead a *Shakman* claim, *i.e.*, a violation of the *Shakman* Decrees, a plaintiff "must allege that a political reason or factor was the cause of the adverse employment action." *Bonnstetter*, 811 F.3d at 973. This kind of "but-for" causation means that the alleged adverse action would not have occurred absent the prohibited political

considerations. *Cf. Mollet v. City of Greenfield*, --- F.3d ----, 2019 WL 2455735, at \*3 (7th Cir. June 13, 2019) (in a Title VII case, the appeals court stated that the applicable question on summary judgment was not whether a protected activity "was *a* but-for cause of the adverse action, rather whether the political activity was *the* but-for cause of the adverse action") (emphases in original)).

The crux of the *Shakman* claim here is that the Recorder's Office laid off plaintiffs because of their non-affiliation with Ms. Yarbrough and their perceived affiliation with Mr. Moore (Compl., ¶¶ 26-28). The termination of plaintiffs' employment is an adverse employment action addressed by the *Shakman* Decrees, and defendants do not dispute that plaintiffs' non-affiliation with Ms. Yarbrough and their perceived affiliation with Mr. Moore constitute political considerations. The question is whether plaintiffs' complaint sufficiently alleges facts making it plausible that these political considerations *caused* plaintiffs' termination. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

We find that it does not do so. True, plaintiffs' complaint contains allegations stating that their political affiliation was the cause of their termination (*See, e.g.*, Compl., ¶ 23 ("The Recorder's Office terminated the Plaintiff's [sic] employment because the Plaintiffs were not politically affiliated with Yarbrough"); *see also id.*, ¶¶ 26-27). But these conclusory allegations simply recite the causation element of a *Shakman* claim without any further factual support. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); *Hebron v. DIRECTV, LLC*, No. 14-cv-8155, 2016 WL 1383196, at \*6 (N.D. Ill. Apr. 7, 2016) (finding that merely asserting that the defendants' "practices caused their hourly wage to fall below the minimum" was insufficient under *Iqbal*). Indeed, plaintiffs' causation allegations are akin to the allegation of discriminatory motivation in

6

*Iqbal*, which alleged that the plaintiff was discriminated against because of his "religion, race, and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at 686. The Supreme Court found this allegation to be a bare and conclusory assertion that was not entitled to a presumption of truth. *Id.* at 680-81, 686. Plaintiffs' causation allegations here are similarly bare and conclusory; as such, they do not factor into our review of plaintiffs' complaint under Rule 12(b)(6). *See McCauley*, 671 F.3d at 616 (explaining that "conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth" and that the plausibility determination is carried out after "excis[ing]" such allegations).

The only non-conclusory factual allegation that provides some semblance of a link between plaintiffs' political affiliation and their termination is paragraph 15, which alleges that "[s]hortly after Yarbrough took office, Deputy Recorder of Deeds William Velazquez prepared a document indicating that the Recorder's Office should 'Let go Tiffany Wilson . . .' and other individuals believed to be politically connected to Moore" (Compl., ¶ 15). This statement says nothing specifically about Ms. Pillows, or any basis for a claim of political discrimination against her. Moreover, plaintiffs do not allege that Mr. Velazquez had the authority to make employment decisions, and it is "well-established that a causal connection between protected activity and adverse employment action cannot be demonstrated by stray remarks made by non-decisionmakers." *Maxwell v. Cty. of Cook*, No. 10 CV 00320, 2011 WL 4639530, at *7 (N.D. Ill. Mar. 17, 2011) (internal alteration and quotations omitted) (addressing a political retaliation claim under 42 U.S.C. § 1983). Nor does paragraph 15 allege that Mr. Velasquez's document indicated that Ms. Wilson, Ms. Pillows, or any other person should be let go *because* of their perceived political affiliation. For a *Shakman* claim, it is not enough that a defendant terminates an employee whose perceived political affiliation happens to conflict with its own; rather, that affiliation must

be "the cause" of the termination. *See Bonnstetter*, 811 F.3d at 973. What is more, plaintiffs presumably have access to the document prepared by Mr. Velazquez—they quoted a portion of it—so it is unclear why plaintiffs did not attach it to their complaint to support their contention that they were terminated because of their political affiliation. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) (explaining that the court "review[s] the complaint and all exhibits attached to the complaint" on a Rule 12(b)(6) motion).

In any event, plaintiffs' allegations suffer from an additional, fundamental defect: they allege that plaintiffs were not laid off until December 2016—four years after Ms. Yarbrough took office (Compl., ¶ 18). Had plaintiffs been laid off shortly after either Ms. Yarbrough took office or the Velasquez document was prepared, the temporal proximity of plaintiffs' termination to these events might have supported a reasonable inference that plaintiffs' political affiliation caused their termination. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792-93 (7th Cir. 2007) (explaining, in the context of a Title VII retaliation claim, that the required causal link "is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action"). Instead, the Recorder's Office continued to employ plaintiffs, despite their alleged political connection to the prior Recorder of Deeds, for nearly four years. This passage of time severely weakens any plausible link between plaintiffs' termination and Ms. Yarbrough's taking of office or Mr. Velasquez's document. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 83 F. Supp. 2d 934, 941 (N.D. Ill. 2000) ("As the time period between the two events increases, the hint of a causal link decreases"). If Ms. Yarbrough or her office wanted to terminate plaintiffs because of their connection to Mr. Moore,

why would they allow them to continue to work at the Recorder's Office until late 2016 before doing so? If plaintiffs' alleged political affiliation with the former Recorder of Deeds was anathema to Ms. Yarbrough, we would expect her office to have "cleaned house" as soon as possible after the regime change in late 2012, not years later. *See McCauley*, 671 F.3d at 616 (noting that the plausibility determination "'requires the reviewing court to draw on . . . common sense'" (quoting *Iqbal*, 556 U.S. at 679)).

Plaintiffs also allege that the stated reason for their layoffs—budgetary reasons—was false and a pretext for illegal political discrimination (Compl., ¶¶ 20-21). Like plaintiffs' causation allegations, though, these conclusory allegations do not pass muster under Rule 12(b)(6). *See McCauley*, 671 F.3d at 616. Moreover, the non-conclusory factual allegations about the circumstances surrounding plaintiffs' layoffs do not suggest that the Recorder's Office's stated reason was false or a pretext. We do not see how the Recorder's Office's failure to give plaintiffs 30-days' notices like those given to other laid-off individuals or the office's failure to notify plaintiffs' supervisors of their layoffs can be reasonably inferred to show that budgetary constraints were not the real reason for the layoffs (Compl., ¶ 20). The same is true for the fact that plaintiffs performed necessary and crucial tasks in their positions (*Id.*). And although the allegation that "the Recorder's Office hired at least two other individuals in October and November 2016" with salaries similar to plaintiffs' salaries (*id.*) arguably implicates the budget of the Recorder's Office, more must be alleged before we can reasonably infer that these hirings reflect an absence of budgetary issues. For instance, the budgetary reasons identified by the Recorder's Office may have affected plaintiffs' positions but not the positions for which the other individuals were hired. Or perhaps the Recorder's Office hired the other individuals to fill positions that ordinarily commanded salaries much higher than plaintiffs' salaries, and the office saved money by paying

those individuals in line with plaintiffs. Especially given plaintiffs' failure to identify the positions filled or the tasks performed by the hired individuals, there are too many possibilities to say that the mere hiring of two other individuals with similar salaries plausibly suggests that there were, in fact, no budgetary issues.

Regardless, even if we assumed the falsity of the Recorder's Office's stated reason for laying off plaintiffs, this would not affirmatively translate into an inference that the real reason for plaintiffs' termination was their political affiliation. Although misrepresenting the reason for an employee's termination might be consistent with a desire to obscure a *Shakman* violation, it does not, without more, plausibly suggest that such a violation occurred. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" (internal citations and quotations omitted)).

For these reasons, we conclude that the complaint does not include enough non-conclusory factual allegations to make plaintiffs' charge of political discrimination a "nonnegligible probability." *See In re Text Messaging Antitrust Litig.*, 630 F.3d at 629. Thus, we dismiss Count I for failing to state a plausible *Shakman* claim against the Recorder's Office.[7]

---

[7] We recognize that the Seventh Circuit, even after *Twombly* and *Iqbal*, has indicated that a plaintiff alleging discrimination in the employment context need only allege that the employer's adverse employment action was based on an impermissible reason. *See, e.g., Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-35 (7th Cir. 2015) (Title VII and 42 U.S.C. § 1983 claims based on religion and nationality); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (Title VII sex discrimination claim); *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (Title VII race discrimination claim). This is a "minimal" pleading standard that only requires allegations "identify[ing] the type of discrimination, when it occurred, and by whom." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017); *see Huri*, 804 F.3d at 834 (finding the plaintiff's complaint sufficient where it identified "the type of discrimination. . . the whom. . . and the when"). The Seventh Circuit has further stated that, given the Supreme Court's holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), "a conclusory complaint of employment discrimination is adequate" even after *Twombly* and *Iqbal*. *Reynolds v. AAA Auto Club Enters.*, 525 F. App'x 488, 490-91 (7th Cir. 2013); *see Swierkiewicz*, 534 U.S. at 509-10 (addressing "the proper pleading standard for employment discrimination cases").

**B.**

Defendants also argue that Count II, which seeks indemnity from Cook County, should be dismissed because plaintiffs have not pled a viable *Shakman* claim against the Recorder's Office and, as such, there is nothing for Cook County to indemnify (Defs.' Mot. to Dismiss at 3). We agree: plaintiffs must establish a plausible *Shakman* violation before they can seek indemnification for that violation. Indeed, plaintiffs do not identify any independent basis upon which Count II could stand if their *Shakman* claim is dismissed (doc. # 23: Pls.' Resp. to Defs.' Mot. to Dismiss at 7-8). Given our dismissal of plaintiffs' *Shakman* claim (Count I), we dismiss Count II as well.

**IV.**

Finally, defendants seek dismissal of plaintiffs' complaint with prejudice (Defs.' Mot. to Dismiss at 4). When a court dismisses an original complaint under Rule 12(b)(6), it should ordinarily give the plaintiff "at least one opportunity to try to amend [the] complaint before the

---

We find it difficult to reconcile this seemingly relaxed pleading standard for employment discrimination claims with our understanding of how conclusory allegations are to be treated under the pleading standard enunciated in *Twombly* (and expanded on in *Iqbal*), which applies to *all* civil actions. *See Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike" (internal citations and quotations omitted)). Allowing a conclusory complaint to survive a motion to dismiss strikes us as conflating the notice function of a complaint with the *Twombly-Iqbal* "plausibility" requirement, even though satisfying the former does not necessarily satisfy the latter. *See Adams*, 742 F.3d at 729 ("By emphasizing a plausibility requirement, *Twombly* and *Iqbal* obviously require more than mere notice. . . . An inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims"). And although the Seventh Circuit has found that *Swierkiewicz* survived *Twombly* and *Iqbal*, see *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013), we note that *Swierkiewicz*'s analysis relied primarily, if not solely, on the proposition that allegations in a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." 534 U.S. at 512 (internal quotations omitted); *see also id.* at 514 ("Applying the relevant standard, petitioner's complaint easily satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims"). It seems to us that after *Twombly* and *Iqbal*, and as recognized in the Seventh Circuit's *Adams* decision, fair notice alone is no longer sufficient under Rule 12(b)(6). It is not surprising that the Seventh Circuit has recognized the "tension between *Swierkiewicz* and later decisions, such as" *Iqbal* and *Twombly*. *Reynolds*, 525 F. App'x at 490-91; *accord Luevano*, 722 F.3d at 1028 (noting "some unresolved tension between *Swierkiewicz* and the Court's later decisions in *Twombly* and *Iqbal*").

This tension may not apply in a case brought under the *Shakman* Decrees, where a party must prove a claim by clear and convincing evidence. *See Shakman v. Democratic Org. of Cook Cty.*, No. 69 cv 2145, 2014 WL 2536486, at *1 (N.D. Ill. June 2, 2014). We note that the Seventh Circuit has cited the *Twombly* standard as applicable in a case affirming the dismissal of a complaint alleging prohibited political discrimination in violation of the *Shakman* Decrees. *Bonnstetter*, 811 F.3d at 973-74.

entire action is dismissed." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) (internal quotations omitted). Defendants have not identified any good reason—such as futility, undue delay, undue prejudice, or bad faith—that warrants denying plaintiffs an initial opportunity to amend their complaint here. *See id.* Accordingly, the Court dismisses Counts I and II of plaintiffs' complaint without prejudice and with leave to amend.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. # 14) is granted. We dismiss plaintiffs' complaint without prejudice. Plaintiffs are given leave to amend their complaint by July 10, 2019 if they can do so consistent with Federal Rule of Civil Procedure 11.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: June 18, 2019**